# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAURICE JERMANE HAGWOOD  :    CIVIL ACTION
             :
     v.        :
             :
MICHAEL WENEROWICZ, *et al.*  :    NO. 12-5404

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE      May 23, 2013

   Presently before the court is a Petition for a Writ of Habeas Corpus filed, *pro se*, by Maurice Jermane Hagwood ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving a ten (10) to twenty (20) year term of incarceration at the State Correctional Institution located in Graterford, Pennsylvania. Petitioner seeks habeas relief based on claims of ineffective assistance of counsel, insufficient evidence, state court error, violation of his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), violation of his Confrontation Clause rights under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), violation of his Fourth Amendment rights and jury instructions that violate due process. The Honorable Legrome D. Davis referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner not be afforded habeas relief.

## I.   FACTUAL AND PROCEDURAL HISTORY[1]

   The state court summarized the evidence leading to Petitioner's conviction as follows:

> [Petitioner's] conviction stems from events which unfolded on the night of April 13, 2006 at 10:00 p.m. The Norristown Borough Police Department received a report of a possible armed subject in

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition, inclusive of all exhibits thereto, the Commonwealth's Response, inclusive of all exhibits thereto, and the state court record.

the 500 block of Barbadoes Street, a known high crime area. Officer Brian Saxon arrived first on the scene where he was approached by a Hispanic male who said three black males, dressed in black and armed with "shoot" guns tried to rob him. The man told Officer Saxon that they proceeded south on Barbadoes Street and turned west on Airy Street. Officer Saxon proceeded to this location in his patrol car, with the lights on and observed three black males a short distance away on the Airy Street Bridge. He stopped his vehicle and immediately observed one of the men, Eric Viney, attempt to discard a handgun and two men, one being Viney, begin to flee. At the time, back-up arrived at the scene and Officer Leeds observed … [Petitioner] run directly in front of his patrol vehicle. At that time Officer Leeds observed [Petitioner] remove a gun from his waistband and discard it over a fence. Officer Leeds, Officer Smith and Officer Douglas pursued [Petitioner] on foot. [Petitioner] refused to comply with the Officers' demand to stop. Officers Douglas and Leeds observed [Petitioner] discard another item, a plastic bag, while in their pursuit. [Petitioner] was ultimately apprehended a short distance later and arrested. The plastic bag and gun which were observed being discarded by [Petitioner] were later recovered. The plastic bag was found to contain multiple packs of marijuana and crack cocaine.

*Commonwealth v. Hagwood*, No. 2953 EDA 2008, slip op. at 1-2 (Pa. Super. Ct. May 21, 2009) ("2009 Super. Ct. Op.") (quoting Trial Court Opinion 8/30/07 at 2-3). Following a hearing, Petitioner's motion to suppress the evidence seized was denied and Petitioner faced trial. *Id.* at 2. On February 7, 2007, the second day of trial, a jury convicted Petitioner of possessing a controlled substance with intent to deliver and possessing a controlled substance. *Id.* at 2-3. The jury acquitted Petitioner of a resisting arrest charge, but was deadlocked on the pending gun charges. *Id.* at 3. On April 26, 2007, Petitioner was sentenced, on the drug convictions, to an aggregate five (5) to ten (10) year sentence. *Id.*

Petitioner went to trial on the remaining gun charges and, on May 17, 2007, Petitioner was convicted. *Id.* On June 13, 2007, he was sentenced to an aggregate five (5) to ten (10) year sentence, to be served consecutive to the April 26, 2007 sentence. *Id.* Petitioner then appealed.

*Id.* On May 21, 2009, the Pennsylvania Superior Court affirmed the judgment of sentence.[2] *Id.* at 3-11. The Pennsylvania Supreme Court denied allowance of appeal ("*allocatur*") on February 25, 2010. Resp. in Opp'n to Pet. for Writ of Habeas Corpus ("Resp.") at 5. Petitioner did not seek *certiorari* in the U.S. Supreme Court.

On March 9, 2011, Petitioner timely sought collateral review by filing a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. *Commonwealth v. Hagwood*, No. 2980 EDA 2011, slip op. at 3 (Pa. Super. Ct. July 26, 2012) ("2012 Super. Ct. Op."). Appointed counsel filed a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 827 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*). 2012 Super. Ct. Op. at 3. The PCRA court dismissed the petition and granted counsel leave to withdraw. *Id.* On July 26, 2012, the Superior Court affirmed the PCRA court's decision.[3] 2012 Super. Ct. Op. at 3-15. Petitioner did not seek *allocatur* in the Pennsylvania Supreme Court. Resp. at 7.

On September 21, 2012, Petitioner filed the instant habeas petition claiming: (1) the PCRA court erred by failing to require PCRA counsel to address all legal issues and authorities that were germane to his no-merit letter; (2) the trial court erred in denying Petitioner's

---

[2] On direct appeal, Petitioner claimed that: (1) the trial court erred when denying Petitioner's motion to suppress; and (2) the evidence was insufficient to sustain his conviction for possession of crack cocaine with the intent to deliver. 2009 Super. Ct. Op. at 2.

[3] On PCRA appeal, Petitioner claimed that: (1) the PCRA court erred by failing to require PCRA counsel to address all legal issues and authorities that were germane to his no-merit letter; (2) the PCRA court erred by failing to afford Petitioner a hearing on his objections to PCRA counsel's no-merit letter; (3) the prosecutor violated *Batson* by exercising his peremptory challenges to exclude African-Americans on account of their race; (4) trial counsel was ineffective for failing to object to the prosecutor's peremptory strikes of African-Americans from the jury panel and PCRA counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to object; (5) the PCRA court erred by failing to order (and PCRA counsel erred by failing to request) a hearing on Petitioner's *Batson* claim; (6) Petitioner's Confrontation Clause rights were violated, because trial counsel stipulated to the lab report concerning the drugs seized and PCRA counsel was ineffective for failing to challenge trial counsel's decision to stipulate; (7) the trial court's re-instruction on the discarded gun attributed to Petitioner violated due process, trial counsel was ineffective for failing to object to the instruction and PCRA counsel was ineffective for failing to challenge trial counsel's failure to object; and (8) PCRA counsel failed to challenge Petitioner's enhanced sentence. 2012 Super. Ct. Op. at 3-4.

3

suppression motion; (3) the evidence was insufficient to support Petitioner's conviction for possession of crack cocaine with the intent to deliver; (4) the PCRA court erred by failing to afford Petitioner a hearing on his objections to PCRA counsel's no-merit letter; (5) (a) the prosecutor violated *Batson* by exercising his peremptory challenges to exclude African-Americans on account of their race, (b) trial counsel was ineffective for failing to object to the prosecutor's unconstitutional peremptory challenges and (c) PCRA counsel was ineffective for failing to raise the *Batson* issue; (6) (a) the PCRA court erred by failing to order (and (b) PCRA counsel erred by failing to request) a hearing on Petitioner's *Batson* claim; (7) trial counsel ineffectively stipulated to the lab report concerning the drugs introduced as evidence against Petitioner, thereby waiving Petitioner's Confrontation Clause rights under *Melendez-Diaz*; (8) (a) the trial court's re-instruction on the discarded gun attributed to Petitioner violated due process, (b) trial counsel was ineffective for failing to object to the re-instruction and (c) PCRA counsel was ineffective for failing to challenge trial counsel's failure to object; and (9) PCRA counsel failed to challenge Petitioner's enhanced sentence. Petition ("Pet.") at 5-18.[4]

The Commonwealth argues that: claims one, four, six(a) and nine are not cognizable; claim two is barred from habeas review by *Stone v. Powell*, 428 U.S. 465 (1976); the claims of PCRA counsel ineffective assistance claims – claims five(c), six(b) and eight(c) – are not cognizable; the *Batson* (claim 8(a)), *Melendez-Diaz* and trial re-instruction (claim 8(a)) claims are procedurally defaulted; the ineffective assistance of trial counsel claims related thereto – claims five(a), seven and eight(b) – lack merit; and the sufficiency claim (claim three) lacks merit. Resp. at 15-29.

---

[4] The court employs the pagination the Clerk of Court imposed when it scanned the \habeas petition for purposes of electronic filing.

This court finds that: claims one, four, five(c), six (a-b), eight(c) and nine are not cognizable; claim two is barred from review by *Stone v. Powell*; claim five(a), the *Batson* claim, and claim eight(a), the re-instruction claim are procedurally defaulted; [5]and claim three – the sufficiency claim, claims five(b), seven and eight(b), the remaining ineffective assistance of trial counsel claims, lack merit.

## II. DISCUSSION

### A. Non-Cognizable Claims One, Four, Five(c), Six(a)-(b), Eight(c) and Nine

Habeas relief is available only for violations of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). For this reason, claims based upon state law error are not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In addition, habeas relief can be granted only based upon the proceedings that actually resulted in the petitioner's conviction, not upon circumstances that occurred during the petitioner's state collateral proceedings. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). Therefore, claims premised upon delay or other problems encountered while seeking state collateral relief are inappropriate grounds for granting federal habeas relief. *See id.* Inasmuch as claims one, four and six(a) are based upon alleged PCRA court error in denying Petitioner an evidentiary hearing or other procedural error, they are not cognizable and should be dismissed without review. *See id.*

The habeas statute also expressly provides that claims of ineffective assistance of state post-conviction counsel are not cognizable. 28 U.S.C. § 2254(i). Hence, claims five(c), six(b), eight(c) and nine, which all assert ineffective assistance on the part of PCRA counsel, are not cognizable. *Id.*

---

[5] This court finds that Petitioner does not raise a claim that the trial court violated his Confrontation Clause rights under *Melendez-Diaz*. Instead, Petitioner's claim is properly understood to raise the exhausted claim that trial counsel ineffectively waived Petitioner's Confrontation Clause rights by stipulating to the lab report concerning the drugs admitted as trial evidence against Petitioner. Hence, there is no reason to consider whether Petitioner waived a claim that the trial court violated his Confrontation Clause rights under *Melendez-Diaz*.

**B.**     *Stone v. Powell* – **Claim Two**

In claim two, Petitioner asserts that the trial court erred by denying his motion to suppress evidence the police seized on the night of his arrest.  Pet. at 7.  Petitioner had a pre-trial hearing concerning suppression, his motion was denied and he appealed the trial court's decision to the Superior Court.  2009 Super. Ct. Op. at 2, 4-7.  Hence, this court may not consider Petitioner's Fourth Amendment claim.  *See Stone v. Powell*, 428 U.S. at 494 (concluding that, when the petitioner had a full and fair opportunity to litigate a Fourth Amendment claim in the state court, he may not be granted habeas relief based on that claim).

**C.**     **Exhaustion and Procedural Default**

**1.**     **Basic Principles**

A habeas petitioner must exhaust state court remedies before obtaining habeas relief.  28 U.S.C. § 2254(b)(1)(A).  The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court and the Pennsylvania Supreme Court.  *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992).  However, in light of a May 9, 2000 order of the Pennsylvania Supreme Court, it is no longer necessary for Pennsylvania inmates to seek *allocatur* from the Pennsylvania Supreme Court in order to exhaust state remedies.  *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

If a habeas petitioner has presented his claim to the state courts, but the state courts have declined to review the claim on its merits, because the petitioner failed to comply with a state rule of procedure when presenting the claim, the claim is procedurally defaulted.  *See Harris v. Reed*, 489 U.S. 255, 262-63 (1989).  When a state court has declined to review a claim based on a procedural default and the claim is not later addressed on the merits by a higher court, the

habeas court must presume that the higher state court's decision rests on the procedural default identified by the lower state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Finally, when a habeas petitioner has failed to exhaust a claim and it is clear that the state courts would not consider the claim because of a state procedural rule, the claim is procedurally defaulted.[6] *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In order to demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule." *Id.* at 753 (citation omitted). Examples of suitable cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. *Id.* at 753-54.

The fundamental miscarriage of justice exception is limited to cases of "actual innocence." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). In order to demonstrate that he is "actually innocent," the petitioner must present new, reliable evidence of his innocence that was not presented at trial.[7] *Id.* at 316-17, 324. The court must consider the evidence of innocence presented along with all the evidence in the record, even that which was excluded or unavailable at trial. *Id.* at 327-28. Once all this evidence is considered, the petitioner's defaulted claims can

---

[6]A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review. *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).

[7]This evidence need not be directly related to the habeas claims the petitioner is presenting, because the habeas claims themselves need not demonstrate that he is innocent. *See Schlup*, 513 U.S. at 315.

only be reviewed if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

## 2. ***Batson* - Claim Five(a)**

Petitioner asserts that the prosecutor violated *Batson* by exercising his peremptory challenges in a racially-discriminatory manner and that trial counsel was ineffective for failing to object. Pet. at 15. The Commonwealth responds that the *Batson* claim is procedurally defaulted, because Petitioner failed to raise the claim on direct appeal. Resp. at 19, 22.

Petitioner's failure to raise his *Batson* claim on direct appeal, *see* 2009 Super. Ct. Op. at 3, means that the claim is unexhausted. Were Petitioner to attempt to exhaust the *Batson* claim, his direct appeal omission would constitute waiver of the claim, *see* 42 Pa. Cons. Stat. Ann. § 9544(b), meaning that PCRA relief would be precluded, *see* § 9543(a)(3), hence, the claim is procedurally defaulted. *Robinson v. Coleman*, Civ. A. No. 10-265, 2011 WL 5447845, *3 (E.D. Pa. Nov. 4, 2011). Although Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges, Pet. at 15, he fails to challenge direct appellate counsel's[8] waiver of the *Batson* claim. Hence, he cannot demonstrate cause and prejudice to excuse this default. Furthermore, Petitioner has not presented new, reliable evidence of his innocence. Hence, this court cannot excuse the default of his *Batson* claim.[9]

## 3. **Jury Re-Instruction – Claim Eight(a)**

Petitioner claims that the trial court violated his due process rights by re-instructing the jury concerning the discarded gun attributed to Petitioner in a manner that unconstitutionally

---

[8] Both trial and appellate court online dockets indicate that Petitioner was represented at trial by Francis John Genovese. Mr. Genovese continued to represent Petitioner through his initial direct appeal (*see* Superior Court docket numbers 1290 EDA 2007 and 1616 EDA 2007). These appeals, consolidated on August 7, 2007, were dismissed on April 3, 2008, when Mr. Genovese failed to file his appellate brief. Thereafter, Petitioner was appointed new counsel, Timothy Peter Wile, who represented Petitioner upon the reinstatement of his direct appellate rights. The Superior Court assigned docket number 2953 EDA 2008 to the re-instated direct appeal.
[9] As discussed *infra* Section II(F)(2), the *Batson* claim will be addressed more fully in the context of Petitioner's exhausted claim that trial counsel was ineffective for omitting a *Batson* claim.

lessened the Commonwealth's burden to prove, beyond a reasonable doubt, each element of the charged offense. Pet. at 17. The Commonwealth responds that this claim is procedurally defaulted, because it was not raised on direct appeal. Resp. at 26. For identical reasons as those articulated concerning Petitioner's *Batson* claim, this claim is procedurally defaulted and barred from habeas review. *See supra* Section II(C)(2).

## D. The AEDPA Standard of Review

Any claims adjudicated by a state court must be considered under the deferential standard of review established by AEDPA,[10] which provides that this court cannot grant habeas relief on a claim unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to U.S. Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). When determining whether a state court's decision was contrary to U.S. Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). Instead,

---

[9]AEDPA is the Antiterrorism and Effective Death Penalty Act of 1996.

state court decisions should be "given the benefit of the doubt." *Id.* In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

If, however, the state court does correctly identify the governing U.S. Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams*, 529 U.S. at 406. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407-08.

In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411. Rather, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* In doing so, the habeas court is limited to considering the factual record that was before the state court when it ruled, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011), and the relevant U.S. Supreme Court precedent that had been decided by the date of the state court's decision. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). It is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent, when deciding whether a state court's application of U.S. Supreme Court precedent was **reasonable**. *See Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004). However, the § 2254(d)(1) bar to habeas relief cannot be surmounted solely based upon lower federal court precedent, *i.e.,* lower federal court

precedent cannot justify a conclusion that a state court's application of U.S. Supreme Court precedent was **unreasonable**; only U.S. Supreme Court precedent may be the authority for that conclusion. *Renico v. Lett*, 130 S. Ct. 1855, 1865-66 (2010).

The Supreme Court, addressing AEDPA's factual review provisions in *Miller-El v. Cockerell*, 537 U.S. 322 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340. A clear example of an unreasonable factual determination occurs where the state court erroneously finds a fact that lacks any support in the record. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). In that extreme circumstance, the presumption of correctness under § 2254(e)(1) is also clearly and convincingly rebutted. *Id.* If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is not barred by § 2254(d)(2).[11] *Lambert v. Blackwell,* 387 F.3d 210, 235 (3d Cir. 2004).

### E.  Claim Three – Sufficiency of the Evidence

#### 1.  Standard of Review

Petitioner's claim of insufficient evidence is governed by *Jackson v. Virginia*, which states:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to 'ask itself whether *it* believes

---

[10] Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court, if he satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must still be weighed under the overarching standard of § 2254(d)(2). *Lambert*, 387 F.3d at 235-36.

that the evidence at the trial established guilt beyond a reasonable doubt' . . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review, *all of the evidence* is to be considered in the light most favorable to the prosecution.

443 U.S. 307, 318-19 (1979) (citations omitted) (emphasis in original). The habeas court is to presume that conflicting inferences of historical fact were resolved in favor of the prosecution. *Id.* at 326. Finally, when applying the sufficiency of the evidence test, the habeas court must consider the types of evidence the state's courts consider relevant to proving the elements of the offense at issue. *Id*. at 324. This review is essential inasmuch as the elements of the criminal offense are defined by state law. *Id*. at 324, n.16.

### 2. Claim Three Lacks Merit

Petitioner maintains that the evidence presented at trial was insufficient to sustain his conviction for possession of crack cocaine with the intent to deliver ("PWID"). Pet. at 9. The Commonwealth responds that, on direct appeal, the Superior Court reasonably determined that the sufficiency claim lacked merit, hence, habeas relief is barred. Resp. at 17-19.

In addressing Petitioner's sufficiency claim, the Superior Court first stated the Pennsylvania standard for evidentiary sufficiency claims. 2009 Super. Ct. Op. at 7-8. The Superior Court then described the type of evidence Pennsylvania accepts as relevant to prove constructive possession[12] and the requisite intent to deliver. *Id.* at 8-9. Constructive possession can be demonstrated by the totality of the circumstances, requires proof of the ability to exercise conscious dominion over the substance, the power to control it and the intent to exercise control.

---

[12] The Superior Court explained that the Commonwealth had to prove constructive possession, because the narcotics were not found on Petitioner's person. 2009 Super. Ct. Op. at 9.

*Id.* at 9 (citing *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. Ct. 2005)). The intent to deliver narcotics can be inferred from the quantity of drugs possessed, the manner of packaging the drugs, the absence of paraphernalia for drug use, the defendant's behavior, the presence of large amounts of cash and expert opinion testimony. *Id.* (citing *Commonwealth v. Heater*, 899 A.2d 1126, 1131 (Pa. Super. Ct. 2006), *allocatur denied*, 926 A.2d 973 (Pa. 2007)). Finally, the Superior Court resolved Petitioner's sufficiency claim as follows:

> Upon our review of the evidence presented at trial in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that it was sufficient to support the [PWID] conviction. Here, [Petitioner] was observed discarding a worn plastic bag while he was being pursued by the police. The plastic bag was later recovered and contained five medium sized bags containing 5.44 grams of marijuana and 42 small pink heat-sealed baggies containing 3.11 grams of crack cocaine. Clearly, we find [Petitioner] constructively possessed the drugs herein. Moreover, the evidence adduced at trial established that he possessed the crack cocaine with intent to deliver. At trial, Detective Jarrod Geisdorfer was presented as an expert in the field of narcotics trafficking. In concluding the crack cocaine was possessed with intent to deliver rather than personal use, Detective Geisdorfer noted that [Petitioner] was not found to be in possession of any drug paraphernalia. He also relied on the fact that the drugs were packaged for delivery in $10.00 bags and that such packaging was consistent with what he had observed in Norristown as well as other areas of Montgomery County. Additionally, he testified that the 3.11 grams of cocaine, if sold as one piece would cost between $120.00 and $160.00 dollars [sic]. However, when the same amount was broken up into smaller pieces and sold individually at $10.00 a bag, the cocaine would have a street value of $420.00, and the revenue generated would be much higher. *See* N.T., 2/7/07, at 84-87. Accordingly, based on the foregoing, we find the evidence was sufficient to support the PWID conviction.

2009 Super. Ct. Op. at 10-11.

The Superior Court's resolution of Petitioner's claim was neither contrary to nor an unreasonable application of U.S. Supreme Court precedent. First, the Third Circuit has expressly held that the Pennsylvania standard for evidentiary sufficiency is identical to the

*Jackson* standard. *See Evans*, 959 F.2d at 1233. Hence, the Superior Court's resolution of Petitioner's claim was clearly consistent with and not contrary to U.S. Supreme Court precedent. Second, *Jackson* requires the habeas court to consider the types of evidence the state's courts consider relevant to proving the elements of the offense at issue. 443 U.S. at 324. Hence, the Commonwealth did present relevant evidence to prove that Petitioner constructively possessed the narcotics, because the police witnessed him discard the narcotics while they were chasing him. Further, the Commonwealth produced an abundance of relevant evidence to prove that Petitioner possessed the crack, not for his personal use, but with the intent to deliver it to others.[13] Viewing the evidence presented in the light most favorable to the Commonwealth, a rational juror could find all the elements of PWID beyond a reasonable doubt. Accordingly, the Superior Court's resolution of Petitioner's claim was reasonable and the AEDPA standard bars habeas relief.

**F.      Claims Five(b), Seven and Eight(b) – Ineffective Assistance of Counsel**

**1.      Standard of Review**

Petitioner has advanced several claims of ineffective assistance of trial counsel. Such assertions must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that

---

[13] There was an absence of drug paraphernalia and the expert testified that the drugs were packaged for delivery to maximize revenue from their sale. 2009 Super. Ct. Op. at 10-11.

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence. *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697. Further, counsel will not be found ineffective for failing to present an unmeritorious claim or objection. *Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).

### 2. Claim Five(b) Lacks Merit

Petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's use of his peremptory challenges in a racially discriminatory manner, in violation of *Batson*. Pet. at 15. The Commonwealth responds that this claim lacks merit. Resp. at 22-24.

In resolving Petitioner's ineffective assistance claim, the Superior Court identified *Strickland* as relevant precedent and also cited several cases applying the Pennsylvania standard for ineffective assistance claims. 2012 Super. Ct. Op. at 5-7. The Third Circuit has held that the Pennsylvania ineffective assistance standard is not contrary to the *Strickland* standard. *Jacobs v. Horn*, 395 F.3d 92, 106 n.9 (3d Cir. 2005). Furthermore, the Superior Court determined that trial counsel was not ineffective, because the omitted *Batson* claim lacked merit. 2012 Super. Ct. Op.

at 9-11. Inasmuch as the Third Circuit has held that counsel is not ineffective for failing to raise a meritless claim, *Johnson*, 549 F.3d at 301, this is a reasonable application of the *Strickland* standard. *See Fischetti*, 384 at 149. However, it must be determined whether the Superior Court's resolution of the omitted *Batson* claim was contrary to or an unreasonable application of U.S. Supreme Court precedent, or can otherwise be sustained.

The Superior Court decided that Petitioner's *Batson* claim lacked merit, because Petitioner had failed to present a *prima facie* case of racial discrimination in jury selection. 2012 Super. Ct. Op. at 10-11. In doing so, the Superior Court relied upon the Pennsylvania rule that, to establish a *prima facie Batson* claim, defendants must preserve a record specifically identifying:

1. The race or gender of all venirepersons in the jury pools;
2. The race or gender of all venirepersons remaining after challenges for cause;
3. The race or gender of those removed by the prosecutor; and,
4. The race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken down by the defense.

2012 Super. Ct. Op. at 10 (quoting *Commonwealth v. Hill*, 727 A.2d 578, 581-82 (Pa. Super. Ct. 1999), *appeal denied*, 747 A.2d 898 (Pa. 1999)). The authority for these specific requirements that *Hill* cited was *Commonwealth v. Spence*, 627 A.2d 1176 (Pa. 1993). *See Hill*, 727 A.2d at 582. The Third Circuit has held that the addition of the *Spence* factors to the *Batson prima facie* case is both contrary to and an unreasonable application of *Batson*. *Coombs v. DiGuglielmo*, 616 F.3d 255, 261 n.4 (3d Cir. 2010); *Holloway v. Horn*, 355 F.3d 707, 729-30 (3d Cir. 2004). The consequence of the Superior Court's reliance upon the contrary and unreasonable *Spence* rule is that AEDPA deference is not afforded to its resolution of the *Batson* claim and, instead, this court must employ *de novo* review of the *Batson* claim. *Coombs*, 616 F.3d at 261; *see also*

*Bronshtein v. Horn*, 404 F.3d 700, 724 (3d Cir. 2005) (Alito, J.) (applying *de novo* review to a *Batson* claim that the state court resolved, based upon *Commonwealth v. Simmons*, 662 A.2d 621, 631 (Pa. 1995), a decision which adds similar requirements to a *Batson prima facie* case as does the *Spence* rule).

The Equal Protection Clause prohibits a prosecutor from exercising his peremptory challenges to strike potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. at 89. Were a prosecutor to do so, his conduct would violate the equal protection rights of the defendant, the juror struck and harm the community as a whole by undermining public confidence in the fairness of our system of justice. *Id.* at 87. *Batson* provides a three-step process for evaluating whether a peremptory challenge was based upon race:

> First, a defendant must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008) (citations and quotations omitted).

A defendant can establish a *prima facie* case by: (1) showing that he is member of a cognizable racial group and that the prosecutor has used peremptory challenges to strike venire members of the defendant's race; (2) relying upon the fact that peremptory challenges are a jury selection process that permits those to discriminate who are inclined to do so; and (3) showing that these facts and any other relevant circumstances raise an inference that the prosecutor struck venire persons on account of their race. *Batson*, 476 U.S. at 96. A pattern of strikes against jurors of the defendant's race may give rise to an inference of discrimination. *Id.* at 97. Likewise, the prosecutor's questions and statements during *voir dire* and while exercising

peremptory challenges may support or refute an inference of discrimination.[14]  *Id.*  The prosecution's burden at step two is not demanding, because the reason advanced need not be persuasive or even plausible, it simply must be facially race-neutral.  *Rice v. Collins*, 546 U.S. 333, 338 (2006).  At step three, the court must evaluate the persuasiveness of the justification proffered by prosecution, bearing in mind that the defendant bears the burden to persuade the court that the prosecutor exercised a peremptory challenge based upon the juror's race.  *Id.*  All record circumstances that bear on racial animosity must be considered.  *Snyder*, 552 U.S. at 478.  The reviewing court must examine all evidence to determine whether the prosecution's race-neutral explanations are pretextual.  *Coombs*, 616 F.3d at 262.

Petitioner's *Batson* claim fails, because he cannot demonstrate a *prima facie* case during the course of either of his trials.  Petitioner alleges that the prosecutor exercised peremptory challenges to strike African-Americans from the venire, Pet. at 15, and he claimed in the state court that only one African-American served on one of his juries.  2012 Super. Ct. Op. at 9.  However, there is no transcript of the *voir dire* for either of his trials.  Hence, it is impossible to confirm that Petitioner's assertions are correct.  Further, there is no evidence that the prosecutor used a high percentage of his exercised peremptory challenges to remove African-Americans, nor are the prosecutor's statements and questions during *voir dire* and while exercising peremptory challenges part of the record.  Moreover, this court is unaware of the initial number of African-Americans in either venire.  In addition, the crimes alleged do not appear to be racially motivated, despite the fact that the robbery victim was Hispanic, 2009 Super. Ct. Op. at 2, and Petitioner is African-American.  In short, based on the limited information available,

---

[14] The Third Circuit has identified the following as additional, relevant factors to consider in evaluating whether the defendant can establish a *prima facie* case:  (1) the number of the cognizable racial group members in the panel; (2) the nature of the crime; and (3) the race of the defendant and the victim.  *Lewis v. Horn*, 581 F.3d 92, 103 (3d Cir. 2009).

Petitioner's *Batson* claim must fail.  Because Petitioner's *Batson* claim is unmeritorious, trial counsel could not have been ineffective for failing to raise the claim, *Johnson*, 549 F.3d at 301, as the state court reasonably determined.

### 3.      Claim Seven Lacks Merit

Petitioner claims that trial counsel ineffectively stipulated to the lab report concerning the drugs seized from him, thereby waiving his Confrontation Clause rights under *Melendez-Diaz*. Pet. at 16.  The Commonwealth responds that the Superior Court reasonably concluded that this claim lacks merit.  Resp. at 24-25.

The Superior Court determined that Petitioner's claim failed for three reasons.  First, absent authority that *Melendez-Diaz* applies retroactively to cases on collateral review, Petitioner could not obtain relief based on that case, because it was decided two years after his conviction and sentence.  2012 Super. Ct. Op. at 11.  Second, trial counsel could not be ineffective for failing to predict *Melendez-Diaz*. *Id.* at 11-12.  Finally, lengthy testimony about cocaine would not necessarily have helped Petitioner's case. *Id.* at 12.  Hence, trial counsel's actions did not prejudice the defense. *Id.*

This court finds that the Superior Court reasonably determined that trial counsel was not ineffective for failing to predict the U.S. Supreme Court's decision in *Melendez-Diaz*.  As the Superior Court observed, *see* 2012 Super. Ct. Op. at 11, Petitioner was tried in 2007 but *Melendez-Diaz* was not decided until 2009.  It is well-established that, "only in a rare case," may an attorney be found ineffective for failing to anticipate a change in the law.  *United States v. Davis*, 394 F.3d 182, 189 (3d Cir. 2005) (citing *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989); *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996).  Hence, it was reasonable

to conclude that trial counsel was not ineffective for failing to predict *Melendez-Diaz*, and his claim lacks merit.

### 4. Claim Eight(b) Lacks Merit

Petitioner claims that trial counsel was ineffective for failing to object, on due process grounds, to the trial court's re-instruction concerning the discarded gun attributed to Petitioner. Pet. at 17. The Commonwealth responds that the Superior Court reasonably resolved Petitioner's ineffective assistance claim. Resp. at 26-28.

The Superior Court found that trial counsel was not ineffective, because the jury charge trial counsel ignored was legally correct and clearly conveyed the elements of the charged offense. 2012 Super. Ct. Op. at 13-14. The Superior Court's conclusion that trial counsel was not ineffective, because there was no merit to challenging the jury instruction now at issue was reasonable. *See Johnson*, 549 F.3d at 301. The question remains whether the Superior Court's resolution of the omitted due process claim was contrary to or an unreasonable application of U.S. Supreme Court precedent, or can otherwise be sustained.[15]

If the instruction Petitioner now challenges relieved the prosecution of its burden to prove an element of the charged offense, his right to due process was violated. *See Sandstrom v. Montana*, 442 U.S. 510, 521 (1979). That is, if the challenged instruction omitted an element of the offense, or erroneously defined an element of the offense, it violated due process. *See California v. Roy*, 519 U.S. 2, 5 (1996) (*per curiam*); *Pope v. Illinois*, 481 U.S. 497, 500-01 (1987). Further, if the jury instruction at issue is ambiguous concerning a required element, whether Petitioner's jury was, nevertheless, properly instructed depends on whether there is a reasonable likelihood that Petitioner's jury could have understood the challenged instruction to

---

[15] This court may not re-examine the Superior Court's conclusion that the challenged instruction was correct under state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

omit the required element. *See Boyde v. California*, 494 U.S. 370, 380 (1990). Finally, the challenged instruction may not be evaluated in isolation, but must be considered in the context of the jury instructions and the trial record as a whole.[16] *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The Superior Court reasonably determined that the challenged instruction did not violate due process. First, the Superior Court noted that the challenged instruction had to be evaluated as part of the whole trial record, *see* 2012 Super. Ct. Op. at 12, which is consistent with what the U.S. Supreme Court requires. *See Estelle*, 502 U.S. at 72. Further, the state court determined that the challenged instruction identified each element of the charged offense, *see* 2012 Super. Ct. Op. at 13, which is the due process inquiry required by U.S. Supreme Court precedent. *See Roy*, 519 U.S. at 5; *Pope*, 481 U.S. at 500-01.

This court's review of the challenged instruction reveals that, as the Superior Court found, *see* 2012 Super. Ct. Op. at 13, the jury was instructed that the Commonwealth was required to prove that: (1) Petitioner carried a firearm, (2) the firearm was in working condition, (3) Petitioner carried the firearm outside of his home and (4) Petitioner did not have a valid license for the firearm. (N.T. 5/17/07 at 132-33). Pennsylvania law requires that the Commonwealth prove the firearm was concealed on the defendant's person. 18 Pa. Cons. Stat. Ann. § 6106(a)(1); *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. Ct. 2004). Although the challenged instruction[17] did not precisely identify concealment when it enumerated

---

[16] Jury instructions are evaluated as a whole, because:

> Jurors do it sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde*, 494 U.S. at 380-81.

[17] Petitioner challenges the following instruction:

the elements, it did specify that Petitioner was charged with, "carrying a firearm **concealed on or about his person** without a license."  (N.T. 5/17/07 at 132 (emphasis added)).  Additionally, the initial instruction did identify concealment as an element of the offense.  (N.T. 5/17/07 at 121).  Hence, reading the jury instructions as a whole, *see Estelle*, 502 U.S. at 72, one could reasonably decide that the challenged instruction, although imperfect, did not violate due process.[18]  For these reasons, there would be no merit to a due process challenge to the jury instruction at issue.  Accordingly, counsel was not ineffective for omitting said challenge.  *See Johnson*, 549 F.3d at 301.

## III.    CONCLUSION

All of Petitioner's claims are non-cognizable, procedurally defaulted or lack merit under the appropriate standard of review.  Reasonable jurists would not debate this court's procedural or substantive dispositions of Petitioner's claims; therefore a certificate of appealability should

---

The defendant has been charged with the offense of carrying a firearm without a license.

In order to find the defendant guilty of carrying a firearm concealed on or about his person without a license, you must be satisfied that the following four elements have been proven beyond a reasonable doubt:

First, that the defendant carried a firearm.

Members of the jury, just to clarify that, it says firearm, it doesn't make reference to any specific firearm.  So the first requirement is the defendant carry a firearm.

Second, that the firearm was in operating condition.  In the absence of evidence to the contrary, it can be inferred that a firearm which appeared to be in operating condition was, in fact, in such condition.

And third, that the defendant was not in his place of abode, that is, his home, or his fixed place of business.

And fourth, that the defendant did not have a license for carrying the pistol.

For purposes of this offense, a firearm is any pistol or revolver with a barrel less than twelve inches.

(N.T. 5/17/07 at 132-33).

[18] In addition, the jury question that motivated the trial court's re-instruction did not concern concealment.  Instead, the jury's question concerned the license element:  "Are we to understand that the defendant had no license for this specific gun, or no license for any gun?"  (Document No. 6-81 at 156).  Since the jury was concerned with the license element, it is unlikely that the jury failed to consider the concealment requirement.

not issue for any claim.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, I make the following:

## RECOMMENDATION

**AND NOW**, this 23rd day of May, 2013, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that claims one, two, four, five(a) and (c), six(a) and (b), eight(a) and nine be **DISMISSED** and that claims three, five(b), seven and eight(b) be **DENIED**, without an evidentiary hearing.  Petitioner has not demonstrated that any reasonable jurist could find this court's rulings debatable, nor shown denial of any federal constitutional right; hence, there is no probable cause to issue a certificate of appealability for any claim.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served with a copy of it.  *See* Local R. Civ. P. 72.1(IV).  Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.


    */s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
Chief United States Magistrate Judge